IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-00818-WDM-BNB

GREGORY M. HULL,

Plaintiff,
v.

DR. CARY SHAMES, in his individual and official capacity as Chief Medical Officer of the Colorado Department of Corrections,
DR. P. BEECROFT, in her individual and official capacity as Medical Doctor at the Fort Lyon Correctional Facility,
KELLEY MCRAE, in her individual and official capacity as Registered Nurse at the Fort Lyon Correctional Facility, and
JOAN STOCK, in her individual and official capacity as Physician's Assistant at the Sterling Correctional Facility,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Defendants' Motion for Summary Judgment** [Doc. #51, filed 6/7/07] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if

the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing that there is a genuine issue for trial. Id. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS

The plaintiff does not submit any evidence to dispute the defendants' statement of material facts. To the contrary, he states:

> Hull agrees with Defendants['] statement of undisputed material
> facts, with a couple of exceptions. Notably, the Defendants
> reference to Hull seeking re-treatment, and secondly, the
> Defendants have not submitted Hull's entire medical record from
> the DOC as it was made available to them.

*Plaintiff's Response to Defendants['] Motion for Summary Judgment*, p. 2  [Doc. #55, filed 7/5/07] (the "Response").

The defendants' use of the term "re-treatment" is not material to my analysis. In addition, the defendants are under no obligation to submit the plaintiff's entire medical record; it is the

plaintiff's burden to submit evidence to create a material fact dispute. Because the plaintiff has not submitted any evidence to dispute the defendants' statement of material facts, and because he does not challenge the evidence submitted by the defendants, I look to the defendants' statement of facts and supporting evidence to establish the undisputed material facts.[1]

The plaintiff currently is incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility. He filed his Prisoner Complaint on April 28, 2006 [Doc. #2] (the "Complaint").

1. The plaintiff was first diagnosed with Hepatitis C in 1998. *Motion*, Ex. A-1, p. 9; Ex. A-2, Response to Interrogatory No. 6.

2. The plaintiff believes he contracted Hepatitis C in 1970 or 1971 during a childhood visit to his dentist. Id. at Ex. A-1, pp. 11-12.

3. The plaintiff received a liver biopsy on October 12, 1998, which indicated that his Hepatitis C was at stage 2 fibrosis and Grade 2 inflammation. Id. at Ex. A-1, pp. 13-14.

4. Following his initial diagnosis, the plaintiff began antiviral chemotherapy for his Hepatitis C in the form of Alpha II Interferon and Ribavirin on January 10, 1999. Id. at pp. 15-16.

---

[1] I am aware that the allegations of the plaintiff's Complaint are sworn under penalty of perjury. *Complaint*, p. 13. Under C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992), a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury. However, the plaintiff's response does not contain any citations to factual statements made in the Complaint. It is not the Court's duty to search the Complaint for statements that are based on personal knowledge and which might serve to create a material fact dispute. See Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995). It is the litigants' responsibility to provide the court with concise arguments, relevant facts, and specific citations to authorities and supporting evidence. Toth v. Gates Rubber Co., 2000 WL 796068, *8 (10th Cir. 2000).

5. The plaintiff discontinued the Alpha II and Ribavirin treatment in June 1999. Id. at Ex. A-2, Response to Interrogatory No. 6. He testified that he stopped the treatment in 1999 for the following reasons:

> That particular treatment made me really mean, short-tempered, and aggressive. As a result of that, I had a couple incidents of domestic – spousal domestic problems; and my wife was arrested for one of them. I was arrested for another. And it was really causing a lot of problems in my marriage. So I decided that I had to either quit the treatment or quit being married or get divorced, so I quit the treatment.

Id. at Ex. A-1, pp. 16-17.

6. On March 16, 1999, the plaintiff received a psychiatric consultation as a result of the Hepatitis C treatment's detrimental impact on his mood. Id. at Ex. A-3, Bates Nos. 0328-0330.[2]

7. The plaintiff's Alpha II and Ribavirin treatment was not effective in reducing the viral load of the Hepatitis C in his liver, and he was considered a non-responder to the treatment. Id. at Ex. A-1, pp. 18-19, 23.

8. On March 21, 2000, the plaintiff's treating physician, Dr. Trouillot, noted the following:

> Of note, the patient had difficulty tolerating prior Interferon therapy and was arraigned on domestic violence charges, which the patient attributed to some psychological side effects precipitated by the Interferon regimen. The patient was a nonresponder to Interferon ribavirin therapy.
> \* \* \*
> Impression: 1) A patent with chronic active hepatitis C who has previously not responded to Interferon ribavirin therapy. Due to his prior difficulty tolerating regimen I would not recommend further Interferon therapy.

---

[2]The defendants have attached to the Motion as Exhibit A-3 portions of the plaintiff's medical records. The records are in chronological order. References to the specific pages are made to DOC's bates numbers, which are affixed to each page of the medical records.

Id. at Ex. A-3, Bates Nos. 0338-0339.

9. On October 8, 2001, Dr. Kugelmas, a physician who examined the plaintiff, wrote:

> Assessment: In summary, Mr. Hull has chronic hepatitis C. He is a nonresponder to rebetron. We discussed HALT-C protocol and he will be seen by one of the nurses for that study. He was also counseled to obtain hepatitis A and B vaccination for his chronic hepatitis C.

Id. at Bates Nos. 0274-0275.

10. The plaintiff agreed that even had he received a full treatment course in 1999, it would not have worked. Id. at Ex. A-1, p. 30.

11. The plaintiff's most recent incarceration began in November 2002. He requested treatment for his Hepatitis C from the DOC medical officials at the Denver Reception and Diagnostic Center upon his arrival. Ex. A-1, p. 7; Ex. A-2, Response to Interrogatory No. 6.

12. In February 2003, the plaintiff was transferred to the Fort Lyon Correctional Facility where he remained until July 2004. Id. at Ex. A-1, pp. 7-8. He was transferred to the Arrowhead Correctional Facility from July through October 2004. Id. at p. 8. He returned to the Fort Lyon Correctional Facility from October 2004 through February 2006. Id.

13. On November 18, 2004, the plaintiff was seen by Dr. Manning, a gastroenterologist at the Southern Colorado Clinic in Pueblo. Dr. Manning made the following recommendation regarding the plaintiff's treatment:

> We are seeing your patient Gregory Hull in the office today. He is a very pleasant forty-three year old gentleman who has chronic hepatitis C and this was measured to be genotype 1a and his last viral load was around 1,300,000 last year in December. His platelet count was okay at 160,000 and his albumin level was fine at 4.2. His ALT was greater than his AST being around 160 compared with 130 respectively. He said he had a liver biopsy done about seven years ago in 1997 and this showed stage II fibrosis at that time. I cannot guarantee that he has not progressed to

compensated cirrhosis by this time. He was treated with Rebetron for about five months; however, he was a non-responder, i.e. he did not get rid of his viral load after five months (24 weeks). Now he is being evaluated for the possibility of re-treatment with Pegasys plus Rebetol.

\* \* \*

Plan: At the present time, we would recommend going ahead and redoing the biopsy followed by attempted re-treatment with Pegasys plus Rebetol.

Id. at Ex. A-3, Bates Nos. 0251-0252.

14. Patty Beecroft, M.D., was a physician with the DOC who worked at the Fort Lyon Correctional Facility. Id. at Ex. A-4, Response to Interrogatory No. 1. On December 6, 2004, Dr. Beecroft noted in the plaintiff's health record that Dr. Manning "would retry Interferon and Ribaviron." Id. at Ex. A-3, Bates No. 0056.

15. On December 7, 2004, Dr. Beecroft referred the plaintiff to drug and alcohol classes so that he could be eligible for Hepatitis C treatment. Id. at Ex. A-1, pp. 36-37; Ex. A-3, Bates Nos. 0138-0139.

16. On December 27, 2004, Dr. Beecroft noted in the plaintiff's health record that she received "Hep C info from Denver Health. He had Riba/Interferon for almost a yr. and failed to clear Hep C. Not recommend to try again." Id. at Ex. A-3, Bates No. 0054.

17. On January 3, 2005, Dr. Beecroft saw the plaintiff in the clinic. She documented that the plaintiff was not eligible to be treated again for his Hepatitis C because he had been a nonresponder to the previous treatment. Id. at Bates No. 0053.

18. On January 24, 2005, Dr. Beecroft wrote to the drug and alcohol education department to inform them that the plaintiff "does not qualify for repeat interferon & Ribavirin therapy or maintenance interferon per protocol." Id. at Bates No. 0050.

6

19. On February 7, 2005, Dr. Beecroft again met with the plaintiff and informed him that, after consultation with Dr. Shames, the Chief Medical Officer of the DOC, the decision was made not to treat the plaintiff for his Hepatitis C because of his prior treatment failure. Id. at Bates No. 0049; Ex. A-4, Response to Interrogatory No. 3; Ex. A-1, pp. 40-41.

20. On February 8, 2005, the plaintiff submitted a Step 1 grievance seeking treatment for his Hepatitis C. Id. at Ex. A-5. Dr. Beecroft responded to the grievance on February 15, 2005:

> You were considered a treatment failure because you could not tolerate the side effects of the Interferon Alpha 2b and Ribavirin. Once treatment is stopped, likelihood of resistance to treatment increases. Your hepatologist on the streets recommended not to re-start. I consulted with DOC Medical Director, who said that treatment failure will not be re-treated. Grievance denied.

Id.; Ex. A-4, Response to Interrogatory No. 3.

21. The plaintiff submitted a Step II grievance on March 2, 2005. Id. at Ex. A-6. Kellie McRae, the Interim Health Services Administrator for Fort Lyon Correctional Facility, responded to the plaintiff's Step II grievance on March 11, 2005:

> Although you feel that you can tolerate the side effects – it is morally and ethically an issue for us to place you on a medication that a specialist has stated is harmful to your health – rather than helpful. Grievance denied.

Id.; Ex. A-7, Response to Interrogatory No. 3; Ex. A-1, pp. 54-55.

22. Ms. McRae's only action with respect to the plaintiff was to respond to his Step II grievance in her capacity as Interim Health Services Administrator. In that position, she had no ability to impact any medical decisions concerning the plaintiff's Hepatitis C treatment. Ex. A-7, Response to Interrogatory No. 3; Ex. A-1, pp. 54-55.

23. The plaintiff submitted a Step III grievance on April 3, 2005. Id. at Ex. A-8. The Step III grievance was denied on October 6, 2005. Id. at Ex. A-9.

24. On November 21, 2005, the plaintiff wrote to Dr. Kubaska regarding the DOC's refusal to treat his Hepatitis C. He asked Dr. Kubaska if he had in fact stated that the plaintiff was not a good candidate for treatment, and if so, he asked that Dr. Kubaska to change his recommendation. Id. at Ex. A-10; Ex. A-1, pp. 29-30. The plaintiff stated in part:

> . . . Did you in fact state that I would not be a good candidate for treatment? If so, would you change your recommendation?
>
> Now to provide you with some information that you probably did not know. I started treatment in January of 1998 and within three months I started using methamphetamine again and totally sabatoged [sic] my treatment. Not to mention that my wife and I fought all the time and the level of stress that I was experiencing and the pressure I was under trying to support a family all contributed to my treatment failure.
>
> I know I have no one to blame but myself, but I would like to be given the opportunity to receive treatment again. I can't think of a better place and time than here and now! Especially since I currently have the time to do so. I have been completely drug free for over three years and I would really appreciate a good recommendation from you.

Id. at Ex. A-10.

25. Dr. Kubaska responded to the plaintiff's letter as follows:

> Enclosed are copies of pertinent medical records, including [a] note from Dr. Trouillot. As you may recall Dr. Trouillot is the hepatologist at University Hospital that treated your Hepatitis C. In his note, he summarizes your liver biopsy results. He is also the one who did not reccomend [sic] further treatment secondary to your failure to respond to therapy and the side effects which you did not tolerate.
>
> I have no further reccomendations [sic] for treatment, other than if the specialist (hepatologist) have any new treatments available. This I do not know- my only reccomendation [sic] would be to see a hepatologist to review if any additional [] therapy would be helpful.

Id. at Ex. A-11.

26. On December 12, 2005, the plaintiff wrote a letter to the Division of Gastroenterology at University Hospital, which states in pertinent part:

> Approximately eleven months ago I signed a release of information so the . . . DOC[] could obtain my records from my family physician William Kubaska and from UCHSC. The DOC denied me treatment for my Hep C. based on statements made by Dr. Thomas Trouillot. Therefore I must plead with the Doctor to change his recommendation so that I can possibly begin treatment. As I said, I need HELP!
>
> I realize I have no one to blame for my predicament but myself, how ever I hope whoever reads this will be sympathetic to my cause. The reasons treatment failed in 1999 was namely because I began using methamphetamine, and secondly because of the extreme level of stress I was experiencing due to a pending divorce. Because I was still married and trying to keep my marriage from failing, the interferon treatment hindered that; in that I became aggressive and short tempered. Now I an [sic] in prison locked in a cell and the side effects of treatment are of no consideration. I would like to be given the opportunity to receive treatment again however I need a positve [sic] recommendation from someone here at the hospitals' [sic] Hepatology clinic. Now, all the reasons for discontinuing treatment have no validity.

Id. at Ex. A-12.

27. From February 2006 through the present, the plaintiff has been incarcerated at the Sterling Correctional Facility. Id. at Ex. A-1, p. 8.

28. Jo Ann Stock is a Physician Assistant with the DOC. She worked at the Sterling Correctional Facility at the time of her interaction with the plaintiff. Id. at Ex. A-13, Responses to Interrogatories Nos. 1 and 3. Ms. Stock did not make any decision regarding whether the plaintiff could receive treatment for his Hepatitis C; she simply informed him of the decision made

9

by others.  Id. at Response to Interrogatory No. 3.  As a Physician Assistant, Ms. Stock could not make any decision regarding whether the plaintiff could receive treatment for his Hepatitis C.  Id.

29. In August 2006, the DOC's Infectious Disease Committee, under the direction of Dr. Shames, began to review new scientific data concerning the diagnosis and management of inmates with Hepatitis C.  During the review, it was determined that it was appropriate to re-consider the plaintiff's request for treatment even though he was a previous nonresponder to Interferon and Ribavirin because he would now meet the new guidelines and could begin a treatment regime of Pegylated Interferon and Ribavirin.  Id. at Ex. A-14, Response to Interrogatory No. 3.

30. The plaintiff began receiving Pegylated Interferon and Ribavirin therapy for his Hepatitis C on November 16, 2006.  Id. at Ex. A-1, pp. 31, 65; Ex. A-2, Response to Request for Admission No. 1.

31. The plaintiff believes that the Pegylated Interferon and Ribavirin therapy was successful because the Hepatitis C virus was undetectable in his liver in December 2006.  Id. at Ex. 1-A, pp. 68-72.

32. The plaintiff's Pegylated Interferon and Ribavirin therapy was scheduled to continue for a total of 48 weeks through October 2007.  Id. at p. 66.

The Complaint asserts one claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment.  The plaintiff is suing the defendants in their individual and official capacities.  He seeks declaratory, injunctive, and monetary relief.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Eleventh Amendment Immunity

The defendants assert that the Court does not have subject matter jurisdiction over the plaintiff's claim insofar as it is asserted against them in their official capacities.[3] *Motion*, pp. 9-11. The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06.

The defendants are employed by the DOC. *Complaint*, pp. 2-3. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against

---

[3]Because this argument challenges the Court's jurisdiction, I address it prior to addressing the defendants' other arguments.

these defendants in their official capacities for retroactive monetary relief. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of the claim against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

### B. Qualified Immunity

The defendants assert that they are entitled to qualified immunity on the plaintiff's claim against them.

> Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. It is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).

The plaintiff bears a heavy two-part burden in establishing that the defendant violated clearly established law. Teague v. Overton, 15 Fed.Appx. 597, 600 (10th Cir. 2001). This burden must be met before the defendant bears his initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings. When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly

12

> violated was clearly established at the time of the conduct at issue.
> A right is clearly established only if there is a Supreme Court or
> Tenth Circuit decision on point, or the clearly established weight of
> authority from other courts has found the law to be as the plaintiff
> maintains. Only if the plaintiff establishes both elements of the test
> does the defendant bear the traditional burden of showing that there
> are no genuine issues of material fact and that he or she is entitled
> to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588 (10th Cir. 2000) (internal quotations and citations omitted).

The Complaint alleges that the defendants' refusal to treat the plaintiff's Hepatitis C violated his Eighth Amendment rights. A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

As a preliminary matter, an individual cannot be held liable in a section 1983 action unless she caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). The undisputed facts establish that neither McRae nor Stock took part in the decision to deny the plaintiff additional therapy. Therefore, defendants McRae and Stock cannot be held liable in this action.

The undisputed facts also establish the following: (1) prior to his incarceration in January 1999, the plaintiff was treated for his Hepatitis C with Alpha II Interferon and Ribavirin; (2) he discontinued his treatment in June 1999; (3) the treatment was not effective in treating the Hepatitis C, and the plaintiff was considered a non-responder to the treatment; (4) due to his difficulty in tolerating the treatment, the plaintiff's treating physician did not recommend further Interferon therapy; (5) when he became incarcerated by the DOC in November 2002, the plaintiff requested treatment for his Hepatitis C; (6) on November 18, 2004, the plaintiff was seen by Dr. Manning, a gastroenterologist, who recommended "redoing the biopsy followed by attempted re-treatment with Pegasys plus Rebetol"; (7) the DOC did not treat the plaintiff because of his prior treatment failure, because the likelihood of resistance to treatment increases after treatment is stopped, and because the plaintiff's own specialist did not recommend further Interferon therapy; (8) in August 2006, the DOC reviewed new scientific data and determined it was appropriate to provide the plaintiff with further treatment; (9) the plaintiff began receiving Pegylated Interferon and Ribavirin therapy on November 16, 2002; and (10) the plaintiff believes the Pegylated Interferon and Ribavirin therapy was successful because the Hepatitis C virus was undetectable in his liver in December 2006.

There is no evidence that defendants Beecroft and Shames were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed if the plaintiff was not provided additional treatment. To the contrary, the undisputed facts establish that the defendants were aware that further treatment was *not* recommended by the plaintiff's treating physician. The plaintiff's insistence that he be provided further treatment "amounts to a difference of opinion with the medical staff, which does not rise to the level of a constitutional violation." Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).

Although Dr. Manning recommended that re-treatment be attempted with different drugs more than two and a half years after the plaintiff's treating physician wrote his recommendation, Dr. Manning did not report anything negative regarding the plaintiff's physical examination. *Motion*, Ex. A-3, Bates Nos. 0251-0252. He stated that the plaintiff appeared reasonably healthy and there was no acute distress. Id. There is no evidence that the defendants were aware that any substantial harm would result to the plaintiff if Dr. Manning's recommendation was not followed.

The plaintiff received additional treatment for his Hepatitis C in August 2006. A "delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Oxendine v. R.G. Kaplan, M.D., 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotations and citation omitted). The plaintiff has not provided any evidence that the delay in receiving additional treatment resulted in substantial harm. In fact, he testified that he believes the additional treatment was successful because the Hepatitis C virus was undetectable in his liver in December 2006.

15

The plaintiff has failed to demonstrate that the defendants violated his constitutional rights. Therefore, his entire claim must be dismissed as to all defendants in both their official and individual capacities, and I need not proceed further with my analysis.

## IV. CONCLUSION

I respectfully RECOMMEND that Defendants' Motion for Summary Judgment be GRANTED and that judgment enter in favor of the defendants and against the plaintiff.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 17, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge